JiDUFRESNE, Judge.
This is an appeal by the State of Louisiana, through the Department of Public Safety and Corrections, defendant-appellant, from an adverse judgment in a suit involving an automobile collision. Orelia Porter, plaintiff-ap-pellee, was a passenger in her daughter’s car when they were struck from the rear by a Department-owned car driven by one of its employees in the course and scope of her employment. Plaintiff subsequently underwent two spinal fusions, with medical bills totaling $130,379.77. At a bench trial, the *1070 trial judge found that the accident was the cause of plaintiff’s injuries, and awarded her the medical expenses, as well as general damages of $300.000.00. Because we find no manifest error in the factual determination as to causation, we must affirm the judgment.
At the outset, we note that there is no real dispute as to the facts of the accident or the Department’s liability. On June 26, 1992, ^plaintiff and her daughter were in slow moving traffic on a side street and apparently stopped because of road work. Their car was struck from behind by a Department car traveling about 5 MPH. Plaintiff alleged that she suffered immediate pain which worsened over the next three years and ultimately resulted in a spinal fusion in July, 1995, and a second fusion in October, 1995. Her medical bills for these procedures were stipulated to be over $130,000.00. Thus, the only issues for trial were whether the accident was causally related to all, or only a part, of plaintiff’s injuries, and what general damages would fairly compensate her for those injuries.
The trier of fact found that the two surgeries were related to the accident and so awarded all medical expenses, and $300,-000.00 in general damages. The Department now appeals, urging that the trial judge erred:
1) In finding that the surgeries were related to injuries sustained in the accident:
2) In not reducing the award for plaintiffs failure to mitigate her damages by attending physical therapy sessions as recommended by her doctors; and
3) In awarding special and general damages based upon the surgeries, rather than on the basis of a short-term soft tissue injury.
Because defendant’s first alleged error relates to the factual finding of causation, the standard of appellate review is whether that finding was manifestly erroneous. In Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993), the court reiterated that application of the “manifest error” standard involves a two part inquiry for reversal of a factual finding. First, the reviewing court must determine that a treasonable factual basis does not exist for the trial court finding. Second, the court must then further determine that the entire record establishes that the finding is clearly wrong.
 The evidence as to causation is as follows. There is no question that plaintiff suffered from pre-accident spondylolisthesis, a degenerative condition typically caused by aging in which the discs in the spine lose water causing the disc spaces to narrow, and sometimes resulting in slippage of discs. There was further agreement among the medical experts that many people with this condition do not suffer any pains at all. Plaintiff testified that she never experienced lower back and leg pains prior to the accident, and this testimony was found credible by the trier of fact. This is clearly a reasonable finding based on the testimony of both the experts and plaintiff.
At the time of the accident plaintiff said that she felt immediate sharp pains in her lower back and arm. Her daughter, a registered nurse, took her to an emergency room where X-rays were normal, and she was sent home to rest. Plaintiff had recently undergone a hysterectomy, and when her back pains continued for a week or so she saw her gynecologist, Dr. Kitty Hymes. By late July she was still suffering, and on July 29, 1992, she saw Dr. Mark Juneau, an orthopedic surgeon.
Dr. Juneau testified that plaintiff complained of pain in her neck, right shoulder, back, buttocks and legs, and was tender to touch in the back but without muscle spasms. X-rays showed spondylolisthesis, with a forward slippage at the L4-5 level. At a second visit of August |417, 1992, her condition was unchanged. His impression was a soft tissue injury, but with no signs of nerve root involvement or disc herniation. He was of the opinion that the spondylolisthesis was not caused by the accident, but did admit that it might possibly have been aggravated by the trauma, although that would have been unusual. When asked whether the later surgeries were related to the accident, he said:
I don’t think that a car accident causes spondylolisthesis. I’m not sure why she had these fusions, but it did not cause her to have spondylolisthesis.
*1071 At the second visit, he advised her to see Dr. Walter Truax, a neurologist.
Dr. Truax first saw plaintiff on September 14,1992. Her complaints were of pain in the back and legs, with tenderness in the lumbar region. The examination was otherwise normal as was an EMG test, but a recent MRI of August 24, showed the L4-5 problem identified by Dr. Juneau from X-rays. This doctor’s impression was soft tissue injury, and he recommended that plaintiff seek physical therapy. He continued to treat her conservatively for the next ten months during which he saw her five more times. He said that he never found either nerve root involvement or any disc herniation. He said that he had no doubt that plaintiff was in pain, but could not find any obvious cause. He also was of the opinion that if the accident had aggravated the pre-existing spondylolisthe-sis, those symptoms should have subsided within two or three months.
Plaintiff testified that after her last visit to Dr. Truax in June, |s1993, her pains continued off and on for the next 16 months, during which she saw her family doctor and a chiropractor, but got no relief. In September, 1994, she saw Dr. Elliot at the Tulane Medical Center, and this doctor sent her for physical therapy. Plaintiff said that she was unable to participate in this because of pain, and she was sent to a pain clinic' where steroid injections were tried. By November problems had developed with side-effects of the injections, and at that point she was referred to a neurosurgeon, Dr. Dzung Dinh, also of the Medical Center.
Dr. Dinh, first saw plaintiff on November 22, 1994. A second MRI of September 29, 1994, showed the spondylolisthesis at the L4r-5 level, and this doctor recommended a de-compressive lumbar laminectomy and fusion to stabilize that level. Plaintiff resisted surgery originally, but returned to this doctor in June, 1995, with significant spasms and tenderness in the back.
The surgery was done on July 5, 1995. The procedure involved placing a rod and screws in the spine to immobilize the L4-5 level, and the doctor said that significant pain was involved, usually requiring a morphine or demarol drip. There was a five day hospital stay, followed by a recuperation of two to three months, during which plaintiff could not get out of bed without using a corset type brace to prevent any movement in the spine during healing.
The surgery and recovery were unremarkable, and plaintiff was doing reasonably well until mid-November when she suddenly developed shooting pains in her right buttock and thigh. X-rays Rrevealed a problem at the L3-4 disc space, and the doctor explained that there was a direct connection between it and the first surgery in that the fusion of the L4-5 level had resulted in pressure at the level above, causing it to fail. A second surgery, similar to the first, was done on October 27, 1995. This procedure was also deemed successful, and plaintiff has progressed well, but still suffers various pains from time to time.
As to causation, Dr. Dinh gave the following explanation on direct examination:
Q. Okay. Doctor, in your expert medical opinion is there a reasonable medical probability that the trauma Mrs. Porter received in her accident on June 26, 199[2], either aggravated the pre-existing spondy-lolisthesis or initiated the onset, precipitated the onset of the symptomatology that she had not had in the spondylolisthesis prior to the accident?
A. Most likely, given that she was totally asymptomatic prior to the accident—
Q. Um-hum
.A. And soon after the accident, the first note by—
Q. Dr. Juneau?
A — which physician — Dr. Juneau indicated she had back pain and leg pain already at that time. So the posterior thigh and leg pain is very consistent with spondylolisthe-sis.
Q. So it would appear that the accident then initiated the onset of the symptoma-tology?
A. Based on those information, yes.
Q, Okay. And then after hearing the history as given by Dr. Truax, as it continued on and apparently got worse, would you say that there is a reasonable medical *1072 probability that the trauma caused the process to move forward, ultimately resulting in the operation that you performed on her on October 27th, 1995?
|7A. Yes. Most likely the trauma precipitated the symptoms and set the motion in ■ process.
On cross-examination, he said that it would be very unlikely that a 5 MPH bump would affect a pre-existing condition, but on redirect, he reiterated that assuming that the information as to the onset of plaintiffs pain at the time of the accident was correct, and considering the medical reports of Drs. Juneau and Truax, there was a reasonable probability that the trauma initiated the process which ended in the two surgeries.
Defendant called Dr. Frank Oser, III, a neurologist, who had reviewed the other medical reports. This expert said that plaintiff suffered from a degenerative condition which would progress whether or not trauma was involved. He thought that in plaintiffs ease if the accident had caused any nerve root or disc injuries, those injuries would have shown up soon after the trauma. He reviewed the early MRI and EMG tests, as well as the findings of Drs. Juneau and Truax, and could not find evidence of such injuries. His conclusion as to the later surgeries was that they resulted either from some later trauma, or ftmn the natural degenerative process of the spondylolisthesis.
On the above evidence, the trial judge determined that plaintiffs testimony that her pains began suddenly at the time of the accident was credible. He further found that more probably than not, the accident set in motion plaintiffs progressively worsening condition, and resulted in the surgeries. In this court’s opinion those findings are clearly reasonable considering the entire record, being based as they Rare on credibility determinations as to plaintiff and the various expert witnesses. While admittedly there were some contradictory statements in Dr. Dinh’s testimony as to causation, resolution of that issue was properly a matter for the trier of fact, and his decision in resolving those contradictions in plaintiffs favor does not constitute manifest error.
Defendant’s second assignment of error relates to plaintiffs alleged failure to mitigate her damages by taking part in physical therapy when it was recommended by Dr. Truax. We reject this argument for two reasons. First, there was no testimony or other evidence to establish that her condition would have unproved had she followed this recommendation, or that it worsened because she did not. Second, she said that she in fact did attempt such treatment at the Tulane Medical Center, but it was too painful to continue the regimen, and it was abandoned by her doctor in favor of steroid injections. On this evidence, defendant has simply not shown that more probably than not plaintiff failed to mitigate her damages.
The final issue concerns quantum. Defendant does not argue that the $300,000.00 award is excessive for a plaintiff who suffered spinal injuries eventually requiring two very painful surgical procedures. It argues, instead, that plaintiff only suffered a brief soft tissue injury, for which the maximum general damage award would be $20,000.00. Because we have found that there was no manifest error in the trier-of-jfact’sg determination that the surgeries were causally related to the accident, defendant’s argument as to soft tissue damages is moot.
For the foregoing reasons, we affirm the judgment of the trial court.

AFFIRMED.